**Silas NIXON, Appellant,**

v.

**S. Stanley MORRIS, Jr., Individually and d/b/a Bowman's Apothecary and Alfred G. Carroll, Jr., Appellees.**

Court of Appeals of Kentucky.

Oct. 18, 1968.

Charles H. Anderson, Louisville, for appellant.

John A. Fulton, John P. Sandidge, Woodward, Hobson & Fulton, Louisville, for appellees.

EDWARD P. HILL, Judge.

This is an appeal from a judgment entered pursuant to a jury verdict for the appellees in appellant's action for damages caused by being struck by an automobile owned by S. Stanley Morris, Jr., and operated at the time by Alfred G. Carroll, Jr.

Appellant raises a number of questions on this appeal; but inasmuch as we conclude that he was entitled to a last clear chance instruction, requiring reversal of the judgment, we deem it unnecessary to discuss other questions raised.

We relate the facts and pertinent testimony bearing upon the proposition that appellant was entitled to a last clear chance instruction.

The accident occurred at about 9:30 p. m., June 11, 1965, at the intersection of 19th and Walnut streets in Louisville.

At the point of the accident, Walnut is a four-lane, one-way street for use of westbound traffic until 6 p. m., after which time parking is allowed in the two curb lanes. Nineteenth Street runs north and south crossing Walnut Street at a right angle. There is no signal light at this intersection and no "marked" crosswalk. It was dark, of course, but the four corners are occupied by business places, and the intersection was illuminated by streetlights in addition to the lights from the business places.

Appellee Carroll, driving west in a small automobile in the north lane of traffic, noticed another vehicle parked in his lane near the intersection. As he pulled around the parked vehicle, he first observed appellant standing (as Carroll says) in the middle of Walnut Street. Appellant, a 69-year-old man, had traveled west along the south sidewalk of Walnut Street and was attempting to cross Walnut at 19th Street.

We quote from appellant's evidence relative to how the accident occurred:

"Q. 84 Do you know what lane you were in at the time this accident happened?

"A. No, sir, I don't. The last thing I remember, when I started crossing that street. I did not see him coming down—didn't pay no attention to what's going down or what is coming. The way—when I turned to my right. Across Walnut Street."

\* \* \* \* \* \*

"Q. 20 All right. Now, when you got to 19th Street intersection, tell the jury what happened, if anything?

"A. Well, when I got to 19th Street, I tell you what I observed. I looked up. I always watch the walkway. I go around walking on all of the streets up there that way, and I looks up this street and I didn't see this car he said he was driving. I seen a truck coming down Walnut Street. I didn't see him at all. I had plenty of time to pass the truck and I went on across the street. I started across the street and that's the last thing I remember."

\* \* \* \* \* \*

"Q. 22 This is 19th Street running north and south. Walnut Street is a one way street, as you know, west. Now, when you got to the intersection

of 19th Street, do I understand you to say then that you did what?

"A. I stopped and looked up and down the street. I seen a truck coming. I stopped. I know I stopped. I stopped and looked up and down the street. I seen a truck coming. The truck looked like he was a pretty good ways."

\* \* \* \* \* \*

"Q. 100 The truth of the matter is when you looked down Walnut Street, you didn't see anything, did you?

"A. Yes, I seen a truck. That's all I did see."

The appellee Carroll, the driver of the small automobile involved in the accident, testified as follows:

"Q. 44 My question was when you came from around this parked car, is that when you noticed Mr. Nixon trying to cross the street?

"A. Yes.

"Q. 45 Is that right?

"A. (Witness nodded head affirmatively.)

"Q. 46 And where was he then?

"A. At the time, he was . . . I can't exactly say where he was. There were some people standing over here (indicating), but I couldn't distinguish him among them, but he stepped out into the street and started across.

"Q. 47 Well, now, you were back here about . . . how far from the corner were you back here (indicating) when you pulled from around this parked car?

"A. I was about two car lengths from the parked car when I pulled around it."

\* \* \* \* \* \*

"Q. 58 And what did you do, just run into him?

"A. No. When I first saw him, it looked as if he were standing there and the next thing I had realized that he had started out so I blew my horn and, as I came closer to the intersection, it seems as though he started running and that's when we hit and it looked as if . . .

"Q. 59 Other than that, do I understand you to say you didn't do anything to avoid hitting him other than blowing your horn and keep going?

"A. I applied my brakes after I saw that he wasn't going to stop."

\* \* \* \* \* \*

"Q. 110 All right. Go ahead and explain.

"A. I came around the car, he ran out in front of me, and I veered to my right trying to miss him."

\* \* \* \* \* \*

"Q 125 Now, then, when you saw him and you were two car lengths back, what did you do?

"A. Sounded my horn.

"Q. 126 Did you stop?

"A. No. I applied my brakes after I saw that he was going to keep coming."

\* \* \* \* \* \*

"Q. 129 All right. And you were going about 30 or 35 miles per hour?

"A. Possibly. I hadn't noticed."

Appellant's witness William Leavell testified he "thought the fellow fell out of the car." Leavell was following Carroll.

The investigating officer Charles A. Booth testified as follows:

"Q. 21 All right. Well, now, Officer, will you just go ahead and explain what your investigation disclosed concerning the physical evidence on the ground and the statements, admissions and otherwise given to you by the de-

fendant, Alfred Carroll, or the other witnesses?

"A. When we arrived at the scene, the pedestrian, Silas Nixon, had been removed by the District Police. The Volkswagen which Alfred Carroll informed us he was driving was . . . there was a Volkswagen, K85–699, it was standing heading west on Walnut Street at the northwest corner at the curb. There were skidmarks leading east from the Volkswagen. The skidmarks started approximately 10 steps east of the intersection and led to the . . . up to the Volkswagen, which was approximately 30 steps over-all. There was damage to the left front end."

Appellee's witness Jesse Williams gave this testimony:

"Q. 17 Keep your voice up, now Jesse, and tell the jury in your own words so I won't have to interrupt you just exactly what you saw. All right, go ahead and tell them.

"A. Well, as I was coming out of the store there I seen . . . what brought my attention is that I heard some horns blowing. So then I seen this fellow standing on the north . . . no, the south side of 19th Street right on the side, well, where the cars park on the side, and it seemed like that he was trying to come across the street and every time that he tried to come across these cars would blow. And then pretty soon I . . . so I was just standing and watching him and the traffic cars kind of wasn't close to him. Well, then he went, and if there was a line in the center of 19th Street, which there wasn't, he would have been standing right on that line. So he stood there for a few minutes and then he was waiting on these cars to get by. And so as soon as this Volkswagen was a little farther back so he had plenty of time to start walking then but he waited until the Volks-

wagen got up on him and then he stepped off the center line.

"Q. 18 All right, you can go ahead.

"A. And then . . . so then he . . . then when this car got up close to him, why then he made a leap like he dove into the bumper of the car. And when it hit him, it just throwed him right back in the street.

"Q. 19 You saw the car hit him?

"A. Yes.

"Q. 20 What part of that car hit him?

"A. Well, it was the . . . it looked like to me it was the bumper that hit him."

\* \* \* \* \* \*

"Q 77 Was he at any time in that crosswalk?

"A. No, sir.

"Q. 78 From the time you first saw him until the time he did everything you saw him do, was he ever in that crosswalk?

"A. No, sir."

\* \* \* \* \* \*

"Q. 15 And he was standing on the white line in the middle of Walnut Street?

"A. In the middle."

\* \* \* \* \* \*

"Q. 90 I believe you said that he was standing on the white line?

"A. I said that he was standing on the white line, but still was standing five— I said about five feet from the crosswalk, if there was a curb out there he still wouldn't be standing even with the curb. He was standing about five feet outside, like this is a crosswalk here (indicating), he was standing about right here (indicating)."

We agree with appellees that appellant's evidence without the evidence of Carroll

(taken as upon cross-examination) was not sufficient to justify a last clear chance instruction. In fact, it is doubtful that appellant's evidence without Carroll's evidence (taken as upon cross-examination) was sufficient to establish actionable negligence. However we think Carroll's evidence required the giving of a last clear chance instruction. The evidence of the officer concerning skid marks affords some support for this conclusion. He testified there were 30 feet of skid marks from the crosswalk east to where the skid marks started. With reaction and braking time added, appellee must have been more than 30 feet east of the crosswalk at the time appellant was standing in the center of the street.

■■■■ It is significant that Carroll stated that when he first saw appellant, "it looked as if he were standing there and the next thing" he realized "that he had started out so" he blew his horn and as he came closer to the intersection, "it seems as though" the appellant "started running," and that is when he struck appellant. Carroll's next answer was this: "I applied my brakes after I saw that he wasn't going to stop." By his own testimony it was some time after he sounded his horn that he applied his brake. Had he applied his brake when he first saw appellant in a perilous situation, the accident might have been avoided. At any rate, we think this was a question for the jury to determine. Fur-

thermore appellees' witness Jesse Williams testified that appellant stood on the center line of the street "for a few minutes," which if true, and Carroll had proper headlights, he should have seen appellant at a time when he was much farther from appellant. Of course, we cannot always give a literal interpretation to the estimates of witnesses on questions of time; sometimes they refer to minutes when they really mean seconds.

Our conclusion herein is not without considerable precedent. In Marshall v. Merrifield, Ky., 431 S.W.2d 870 (decided September 20, 1968), we justified a last clear chance instruction where the injured Marshall was not in or near a crosswalk but in the middle of a block and standing in the center of the street. Otherwise the facts in the Marshall case are strikingly similar to those in the present case. See also Chamberlain v. Wessling, Ky., 429 S.W.2d 355, and Shea v. Bruner, Ky., 426 S.W.2d 482, also 38 Am.Jur. Negligence, § 215.

The judgment is reversed with directions to grant appellant a new trial. If upon another trial the evidence is substantially the same as upon the previous one, a last clear chance instruction should be given.

MILLIKEN, STEINFELD, PALMORE and WILLIAMS, JJ., concur.

MONTGOMERY, J., dissents.